UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 17-0024 (PLF) |
| ANDRE HICKS, | ) ) ) | Civil Action No. 18-0119 (PLF) |
| Defendant. | ) ) | |

OPINION

The matter before the Court is defendant Andre Hicks' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Dkt. Nos. 32 and 33], as amended by his supplemental motion [Dkt. No. 48] and limited by his notice withdrawing certain claims [Dkt. No. 66]. The United States opposes the motion. After careful consideration of the parties' papers, the relevant legal authorities, the motions hearing held on February 27, 2020, and the entire record, the Court will deny Mr. Hicks' motions. A separate Order giving effect to this opinion will issue this same day.[1]

---

[1] The Court has reviewed the following documents and accompanying exhibits in connection with the pending motion: Indictment [Dkt. No. 1]; Superseding Indictment [Dkt. No. 5]; Plea Agreement [Dkt. No. 18]; Government's Proffer of Proof in Support of Guilty Plea ("Proffer") [Dkt. No. 19]; Government's Sentencing Memorandum ("US Sentencing Memo") [Dkt. No. 24]; Defendant's Sentencing Memorandum ("Hicks Sentencing Memo") [Dkt. No. 25]; Final Presentence Investigation Report ("PSR") [Dkt. No. 26]; Judgment [Dkt. No. 30]; Defendant's Pro Se Motions to Vacate under 28 U.S.C. § 2255 ("Pro Se Motions to Vacate") [Dkt. Nos. 32, 33]; Order Appointing Mary E. Davis to Represent Defendant ("Order Appointing Counsel") [Dkt. No. 34]; Supplemental Memorandum of Law in Support of Defendant's Pro Se Motion to Vacate ("Hicks Supp. Mem. of Law") [Dkt. No. 42]; Transcript of Plea Agreement Hearing ("Plea Hr'g Tr.") [Dkt. No. 46]; Government's Response to Defendant's Motion to Vacate ("US Original Response") [Dkt. No. 47]; Defendant's Supplemental Motion to Vacate under 28 U.S.C. § 2255 ("Hicks Supp. Mot. to Vacate") [Dkt. No. 48]; Government's Response to Defendant's Supplemental Motion to Vacate ("US Response") [Dkt. No. 51]; Defendant's

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. *The Defendant's Criminal Conduct*

On January 13, 2017, Andre Hicks sold a PCP-laced cigarette to an undercover police officer and was subsequently arrested. Proffer at 2-3. The officers searched Mr. Hicks' vehicle after his arrest and discovered a semi-automatic pistol with ammunition in the chamber and twenty-seven rounds in an extended magazine beneath clothing in the rear of the vehicle. Proffer at 3; US Sentencing Memo at 6. Mr. Hicks was on supervised release at the time. See Plea Agreement at 4.

On February 7, 2017, a federal grand jury in the District of Columbia indicted Mr. Hicks on the following four counts: (1) unlawful possession with intent to distribute a mixture and substance containing a detectable amount of phencyclidine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count One"); (2) unlawful distribution of a mixture and substance containing a detectable amount of phencyclidine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Two"); (3) unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1) ("Count Three"); and (4) using, carrying, and

---

Reply to Opposition Regarding Supplemental Motion to Vacate ("Hicks Reply") [Dkt. No. 55]; Notice that Defendant Withdraws Certain Claims ("Notice Withdrawing Certain Claims") [Dkt. No. 66]; Order Requesting Supplemental Briefing ("Order for Supp. Briefing") [Dkt. No. 67]; Defendant's Response to Court's Order for Supplemental Briefing ("Hicks Supp. Brief") [Dkt. No. 70]; and Government's Response to Court's Order for Supplemental Briefing ("US Supp. Brief") [Dkt. No. 71].

possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) ("Count Four"). Indictment at 1-3; see also Superseding Indictment at 1-3.[2]

### B. The Defendant's 11(c)(1)(C) Plea and Sentence

Mr. Hicks was represented by court-appointed counsel from the time of his arrest through his plea of guilty. See Minute Entry, dated Feb. 9, 2017. On June 13, 2017, Mr. Hicks pled guilty to Count Two – unlawful distribution of a mixture and substance containing a detectable amount of phencyclidine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – and the government agreed to dismiss all other counts pursuant to the plea agreement. See Plea Agreement at 1-2; Plea Hr'g Tr. at 10:01-04, 30:17-31:16. The parties entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Agreement at 1. According to Rule 11(c)(1)(C), if a defendant pleads guilty to a charged offense, the plea agreement may specify that an attorney for the government will agree either that a "specific sentence" or "sentencing range" is the appropriate disposition of the case, "or that a particular provision of the Sentencing Guidelines . . . does not apply." FED. R. CRIM. P. 11(c)(1)(C). Once a court accepts a plea under Rule 11(c)(1)(C), the recommendation in the plea agreement binds the court. Id. Here, the parties agreed to a specific sentence of thirty months of incarceration, followed by three years of supervised release in Criminal No. 17-0024. See Plea Agreement at 1-2.[3]

---

[2]  The only difference between the original indictment and the superseding indictment is the type of firearms described in the forfeiture provision. Compare Indictment at 3-4 with Superseding Indictment at 3-4.

[3]  The plea agreement discussed herein resolved two criminal cases. In pleading guilty to Count Two of the Superseding Indictment in Criminal No. 17-0024, Mr. Hicks conceded that he violated the terms of his supervised release in Criminal No. 09-0303. For this violation, Mr. Hicks agreed to a sentence of twenty-one months of incarceration, to run consecutive to his sentence in Criminal No. 17-0024 and with no supervised release to follow, resulting in a combined total of fifty-one months of incarceration. See Plea Agreement at 2.

A sentence of thirty months of incarceration was the middle of the Sentencing Guidelines range that the prosecutor and defense calculated for Count Two.  See Plea Agreement at 3-6.  Count Two carried a base offense level of 12, with a two-level increase for possession of a firearm in connection with the offense and a two-level decrease for acceptance of responsibility.  Id. at 3-4.  Mr. Hicks' prior offenses garnered him ten criminal history points under the Guidelines, which put him in Criminal History Category V.  See id. at 4-5.  The corresponding Guidelines range for Count Two therefore was 27-33 months.  Id. at 5.  The parties agreed to a sentence in the middle of the Guidelines range for Count Two, with the government agreeing to dismiss the remaining three counts against Mr. Hicks.  Id. at 2.

The Guidelines range calculated in the plea agreement did not include a career offender enhancement.  See Plea Agreement at 5.  The parties acknowledged, however, that Mr. Hicks may have been eligible for a career offender enhancement under Section 4B1.1 of the U.S. Sentencing Guidelines ("U.S.S.G."):

> Based on the Pre-Trial Services report, it should be noted that your client may qualify for classification as a career offender under U.S.S.G. § 4B1.1.  Under U.S.S.G. § 4B1.1, the defendant would be assigned base offense level of 29 and Criminal History Category VI.  Taking into consideration a 3-level reduction for acceptance of responsibility, as set forth above, this would result in a sentencing guidelines range of 151 to 188 months of incarceration.

Plea Agreement at 4, n.1; see also US Sentencing Memo at 6; Hicks Sentencing Memo at 2.  Under the Sentencing Guidelines, a defendant is a career offender if "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1.  Of Mr. Hicks' prior convictions, the parties agree that only two would have possibly counted towards a career offender enhancement:  (1) a 2009 conviction for unlawful distribution of 100 grams or more of phencyclidine, and (2) a 2009 conviction for attempted

4

possession with intent to distribute a controlled substance (Mr. Hicks' "prior inchoate controlled substance offense").  See Hicks' Supp. Mot. to Vacate at 4 (citing PSR at ¶¶ 34, 41-42); US Response at 7; see also Hicks Supp. Br. at 4-7; US Supp. Br. at 5-6.

During the plea hearing, the Court noted that there was an "open question" about whether Mr. Hicks would be viewed as a career offender under the guidelines.  Plea Hr'g Tr. at 6:09-12.  Defense counsel explained that while the parties did not include the career offender enhancement in the plea agreement, there was a possibility that the probation office may apply the career offender enhancement in its calculation of the guidelines in the presentence investigation report.  Id. at 7:09-19.  Thus, counsel included the footnote referencing Section 4B1.1 of the Sentencing Guidelines in the plea agreement because they did not want the Court to be "surprised" if the presentence investigation report referenced a career offender enhancement that was absent from the plea agreement.  Id. at 7:13-19.  Defense counsel further explained that "the parties don't want to litigate the applicability and all of the arguments that this Court has seen about career offenders."  Id. at 7:05-08.  The Court agreed that there was no reason to reach the question of whether Mr. Hicks qualified as a career offender "when it's easy enough for me to accept the plea today, because I think it's a fair and reasonable plea [under Rule 11(c)(1)(C)]."  Id. at 29:10-13.

At the plea hearing, the Court carefully reviewed with the defendant the consequences of entering a guilty plea and the constitutional rights that the defendant waived by pleading guilty, as was also set forth in the plea agreement.  Plea Hr'g Tr. at 10:01-20:20; Plea Agreement at 7-9.  When questioned by the Court, Mr. Hicks affirmed that he had had adequate time and opportunity to discuss the plea with his lawyer, and that he was fully satisfied with his lawyer's representation of him.  Plea Hr'g Tr. at 12:01-07.  Throughout the plea hearing, the

Court confirmed that the plea agreement had been thoroughly explained to Mr. Hicks, confirmed that Mr. Hicks understood the agreement, and provided Mr. Hicks repeated opportunities to ask any questions he may have had.  Id. at 26:12-21; 26:22-27:20; 27:21-28:10; 28:16-25.  The Court informed Mr. Hicks that unlike some other instances where the Court has discretion in the sentence it imposes, if the Court accepted this plea under Rule 11(c)(1)(C) then it would be bound to sentence Mr. Hicks to "the sentences agreed upon" in the plea agreement.  Id. at 29:01-07.  Before accepting his plea of guilty, the Court asked Mr. Hicks if he had any questions for the Court or for counsel, to which Mr. Hicks said that he had no questions.  Id. at 30:10-16.

The Court accepted the Rule 11(c)(1)(C) plea that resolved both Criminal No. 17-0024 and Criminal No. 09-0303.  Plea Hr'g Tr. at 29:03-07; 30:23-31:16.  On September 6, 2017, it sentenced Mr. Hicks to thirty months of incarceration on Count Two in Criminal No. 17-0024.  Judgment at 1-3.  The Court also sentenced Mr. Hicks to twenty-one months of incarceration for violating the terms of his supervised release in Criminal No. 09-0303, to run consecutively to his sentence in Criminal No. 17-0024.  United States v. Hicks, Criminal No. 09-0303, Judgment on Revocation [Dkt. No. 30] (Sept. 8, 2017) at 1-3.  In accordance with the plea agreement, the government moved to dismiss the remaining counts in the indictment in Criminal No. 17-0024.  See Minute Entry dated Sept. 6, 2017; see also Plea Agreement at 2.

    C.    *The Defendant's 2255 Motions to Vacate, Set Aside, or Correct his Sentence*

On January 18, 2018, Andre Hicks filed two pro se motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 that raised multiple issues.  See Pro Se Motions.[4]

---

[4]  Mr. Hicks filed a form motion to vacate under 28 U.S.C. § 2255 [Dkt. No. 33]. On the same day, he also filed a pro se motion to vacate under 28 U.S.C. § 2255 [Dkt. No. 32] titled, "Emergency motion to vacate his conviction and to suppress tangible evidence in this case and pursuant to Rule 18 [sic] U.S.C. 2255 and withdraw his guilty plea due to ineffective assistance of counsel and inadmissible evidence and in violation for his Fifth Amendment rights

The Court appointed new counsel to represent Mr. Hicks, who then filed a supplemental memorandum of law in support of Mr. Hicks' pro se motion.  See Order Appointing Counsel; Hicks Supp. Mem. of Law.  The United States filed an opposition to Mr. Hicks' 2255 motions.  See US Original Response.  Mr. Hicks then filed a supplemental motion in support of his motion to vacate, set aside, or correct his sentence, raising a new argument that he received ineffective assistance of counsel during the negotiation of the plea agreement.  See Hicks Supp. Mot. to Vacate at 3-4.  The United States responded in opposition, see US Response, to which Mr. Hicks replied, see Hicks Reply.

After briefing was complete on Mr. Hicks' supplemental motion, and after consulting with his appointed counsel, Mr. Hicks filed a notice withdrawing some of his claims.  See Notice Withdrawing Certain Claims.  The only remaining claim involved ineffective assistance of counsel.  Mr. Hicks argues that he had received ineffective assistance of counsel when his counsel advised him to enter into a Rule 11(c)(1)(C) plea because he now alleges that the terms of that plea agreement were based on the "erroneous belief" that Mr. Hicks was a career offender under the United States Sentencing Guidelines.  Id. at 2.  The Notice specified that there was no need for an evidentiary hearing to resolve this single issue.  Id.  At the Court's request, the parties submitted supplemental briefing on the single remaining issue of ineffective assistance of counsel and a motions hearing was held on February 27, 2020.  See Order for Supp. Briefing; Hicks Supp. Brief; US Supp. Brief; Minute Entry dated Feb. 27, 2020.

---

against self-incrimination and a motion for an evidentiary hearing in this case."  The issues that Mr. Hicks raised in these motions included a claim that the indictment was invalid because the grand jury foreperson did not sign it and multiple arguments about the failure to conduct a field test or any subsequent testing on the cigarettes that the police seized from him.  See Notice Withdrawing Certain Claims at 1-2.

7

## II.  LEGAL STANDARD

A defendant bringing an ineffective assistance of counsel claim in a Section 2255 motion bears the burden of establishing a denial of constitutional rights by a preponderance of the evidence.  Daniels v. United States, 532 U.S. 374, 381-82 (2001); see also United States v. Clark, 382 F. Supp. 3d 1, 27 (D.D.C. 2019).  The Court evaluates claims of ineffective assistance of counsel, which implicate Sixth Amendment rights, under the two-part test set out in Strickland v. Washington, 466 U.S. 668, 687 (1984).  As the D.C. Circuit has explained, Strickland requires the defendant to show:  "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense."  United States v. Murray, 897 F.3d 298, 310-11 (D.C. Cir. 2018) (citing Strickland v. Washington, 466 U.S. at 687).  Failure on either prong precludes relief.  Strickland v. Washington, 466 U.S. at 697 ("[T]here is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The Strickland test applies to ineffective assistance of counsel claims that arise both out of trial and out of the plea negotiation process.  United States v. Vyner, 846 F.3d 1224, 1227 (D.C. Cir. 2017) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)); see also Premo v. Moore, 562 U.S. 115, 126 (2011) ("Whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same:  reasonable competence in representing the accused."); United States v. Taylor, 254 F. Supp.3d 145, 153-54 (D.D.C. 2017) (applying the Strickland test to a claim arising out of the plea process).  But the Supreme Court has said that the "deference that must be accorded to counsel's judgment" may be "measured in different ways" at "different stages of the case."  Premo v. Moore, 562 U.S. at 126.

For the purposes of the first Strickland prong, in order to demonstrate deficient performance, the defendant must show that "his counsel's performance fell below an objective

8

standard of reasonableness." United States v. Miller, 953 F.3d 804, 808 (D.C. Cir. 2020) (citing United States v. Mohammed, 863 F.3d 885, 889 (D.C. Cir. 2017)); see also United States v. Gooch, 842 F.3d 1274, 1279 (D.C. Cir. 2016) (explaining that deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). In attempting to demonstrate deficient performance, the defendant must overcome "the [strong] presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Abney, 812 F.3d 1079, 1087 (D.C. Cir. 2016) (quoting Strickland v. Washington, 466 U.S. at 689) (alteration in original). "Because an attorney's strategy almost never becomes an explicit part of the record, 'th[is] presumption may only be rebutted through a showing that no sound strategy posited by the [opposing party, here the government] could have supported the conduct.'" United States v. Ayers, 312 F. Supp. 3d 47, 51 (D.D.C. 2018) (quoting United States v. Abney, 812 F.3d at 1087) (alterations in original) (emphasis added).

The Supreme Court has admonished that when assessing the first prong of counsel's deficient performance, "[h]indsight and second guesses" are "inappropriate, and often more so, where a plea has been entered" than in a case with a full trial on the merits because "[a] trial provides the full written record and factual background that serve to limit and clarify some of the choices counsel made." Premo v. Moore, 562 U.S. at 132. At the plea stage "there is no extended, formal record and no actual history to show how the charges have played out at trial," which "works against the party alleging inadequate assistance" because "[c]ounsel, too, faced that uncertainty." Id. Courts therefore must decide whether reasonable counsel could have believed that their actions would have mitigated risk by decreasing either the likelihood of incarceration or the potential term of incarceration. See id. at 125-29 ("Plea bargains are the

result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."); United States v. Vyner, 846 F.3d at 1226, 1231.

In order to demonstrate prejudice and meet the second Strickland prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Miller, 953 F.3d at 808 (citing United States v. Mohammed, 863 F.3d at 889); see also Strickland v. Washington, 466 U.S. at 694. In the context of plea negotiations, the defendant must show that but for his counsel's errors, there is a reasonable probability that he would have rejected the plea agreement and insisted on going to trial. Premo v. Moore, 562 U.S. at 129; see also United States v. Taylor, 254 F. Supp. 3d at 154. Specifically, it must be reasonably probable that the plea agreement, in the absence of counsel's errors, would not have mitigated the risk posed by trial enough to entice the defendant to forgo his right to assert his innocence. Premo v. Moore, 562 U.S. at 129.

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

Mr. Hicks argues that his attorney's performance was deficient because she failed to argue that his prior conviction for the inchoate controlled substance offense of attempt should not count towards his career offender calculation, and that the plea agreement was thus negotiated under "the erroneous belief" that Mr. Hicks was a career offender under Section 4B1.2 of the U.S. Sentencing Guidelines. Hicks Supp. Mot. to Vacate at 3. In support of this argument, Mr. Hicks points to United States v. Winstead, 890 F.3d 1082 (D.C. Cir. 2018), a D.C. Circuit case that was decided after Mr. Hicks' plea hearing and sentencing.

In United States v. Winstead, the D.C. Circuit held that the definition of "controlled substance offense" under U.S.S.G. § 4B1.2 "clearly excludes inchoate offenses." United States v. Winstead, 890 F.3d at 1091. The court therefore concluded that the commentary to Section 4B1.2, which says that the term "controlled substance offense" includes "attempting to commit such offenses," impermissibly "adds a crime, 'attempted distribution,' that is not included in the guideline." Id. at 1089-90 (emphasis in original). The D.C. Circuit also held that the defendant, Aumbrey Winstead, had received ineffective assistance of counsel because his attorney failed to challenge Mr. Winstead's designation as a career offender at sentencing when there was this "obvious legal argument to make" that the commentary was inconsistent with the guideline itself. United States v. Winstead, 890 F.3d at 1090.

Mr. Hicks now argues that the Winstead decision is directly applicable to his case, arguing that both his sentence and Winstead's sentence were "premised on the belief . . . that [they were] career offender[s]." Hicks Reply at 1-2. Mr. Hicks states that his "career offender status was based on" two prior offenses, one of which was his 2009 inchoate controlled substance offense of attempt. Hicks Supp. Mot. to Vacate at 4. He goes on to argue that because he "was not a career offender" his counsel therefore was "ineffective for negotiating a plea based on this incorrect premise." Id. at 4. The government responds by highlighting the fact that Mr. Hicks "was not sentenced as a career offender." US Response at 3. Instead, "both the prosecutor and the defense counsel went out of their way to make sure that [Mr. Hicks] avoided being labeled with career offender status." Id.

The government is correct. The plea agreement did not include a career offender enhancement and Mr. Hicks was not sentenced as a career offender. Rather, the binding Rule 11(c)(1)(C) plea relied on a non-career offender guideline sentencing range, as did the

Court's ultimate sentence. While the probation office calculated a Guidelines sentencing range for Mr. Hicks that included a career offender enhancement of 151 to 188 months in the PSR, that is not the sentencing range that the prosecutor and defense counsel relied on in the plea agreement. Compare PSR at 23 with Plea Agreement at 4-5. This is a key difference between Winstead and Mr. Hicks' case. In Winstead, the defendant was sentenced as a career offender, which resulted in an "enormous difference" in his sentence. United States v. Winstead, 890 F.3d at 1089. But the sentencing range in Mr. Hicks' plea agreement of 27 to 33 months does not include a career offender enhancement. See Plea Agreement at 5.[5] And as defense counsel explained during the plea hearing, the plea agreement only referenced a potential career offender enhancement because both the prosecutor and defense counsel anticipated that the probation office might calculate a different sentencing range under the Guidelines and the parties didn't want the Court to be "surprised." Plea Hr'g Tr. at 7:13-15; see also Plea Agreement at 4 n.1.

Mr. Hicks also argues that without this open question of whether he was a career offender lurking in the background, a "more favorable plea" would have been negotiated with a lower sentence. Hicks Supp. Mot. to Vacate at 4. He maintains that if his counsel had litigated the question of whether Mr. Hicks was a career offender, then counsel could have argued for a

---

[5] Mr. Hicks' briefing includes an argument that the correct sentencing range absent a career offender enhancement should be 24 to 30 months and therefore the fact that Mr. Hicks' plea agreement was based on a higher range of 27 to 33 months is evidence that his criminal offender status influenced the agreed-upon sentence. Hicks Reply at 2-3. But, as was clarified during oral argument, this lower range cited in Mr. Hicks' briefing is the result of a miscalculation. The guidelines calculation done in the briefing subtracts three points for acceptance of responsibility when one can only subtract two points for acceptance of responsibility with the corresponding offense level. The guidelines range calculated in the plea agreement of 27 to 33 months was the correct range for Mr. Hicks, absent a career offender enhancement.

sentence lower than the middle of the guidelines range, or even for a variance below the guidelines range because of the small amount of drugs involved in his case.

This argument ignores multiple aspects of the plea agreement.  First, as the government points out, the parties were always cognizant of the fact that Mr. Hicks' charge was for a very small amount of drugs – approximately two grams – and the lowest base offense level was for a quantity of "10 grams or less."  US Response at 5 (citing the Plea Hr'g Tr. at 8:14-9:03).  And during the plea hearing, the Court said that the agreed upon sentence seemed "fair and reasonable under the circumstances," after having been apprised of the fact that the two grams Mr. Hicks was pleading guilty to were well below the lowest base offense level applicable.  Plea Hr'g Tr. at 29:01-14.

Second, part of the bargain struck was that if Mr. Hicks pled guilty to Count Two, the government would agree to dismiss the remaining three felony charges, including one that carried a sixty-month mandatory minimum sentence.  See Plea Agreement at 2; Indictment at 3 (charging Mr. Hicks with a violation of 18 U.S.C. § 924(c)(1)).

Third, and most fundamentally, Mr. Hicks' argument fails to recognize the risk involved with litigating the question of whether Mr. Hicks was a career offender – or, alternatively, waiting for the D.C. Circuit to issue the Winstead decision:  the potential that he would lose.  At the time of Mr. Hicks' plea negotiations, the commentary to Section 4B1.2 said that attempt was a qualifying offense.  The Winstead case was pending in the D.C. Circuit, where the Federal Public Defender Service was arguing that attempt and other inchoate crimes should not be qualifying offenses under Section 4B1.2, but the court had not yet issued a decision.  And at the time, all the circuits that had addressed the issue had deferred to the commentary's definition of "controlled substance offense" that included inchoate offenses.  See United States v.

Winstead, 890 F.3d at 1091 (citing United States v. Lange, 862 F.3d 1290, 1294 (11th Cir. 2017); United States v. Nieves–Borrero, 856 F.3d 5, 9 (1st Cir. 2017); United States v. Solomon, 592 Fed. Appx. 359, 361 (6th Cir. 2014); United States v. Chavez, 660 F.3d 1215, 1228 (10th Cir. 2011); United States v. Mendoza–Figueroa, 65 F.3d 691 (8th Cir. 1995) (en banc)).  Under those circuits' interpretation, Mr. Hicks would have been deemed a career offender.  Facing this risk and uncertainty, it was more than reasonable for Mr. Hicks' counsel to choose not to litigate this issue and instead to negotiate a plea under Rule 11(c)(1)(C) that, if accepted, would bind the Court to impose a sentence without a career offender enhancement.  Had Mr. Hicks' counsel decided to forego a plea agreement under which the career offender enhancement was taken off the table and instead to litigate the issue, there was a significant possibility that Mr. Hicks would lose and be sentenced as a career offender.

        Mr. Hicks' counsel could not have predicted the decision that the D.C. Circuit would reach in Winstead.  Cf. United States v. Vyner, 846 F.3d 1224, 1230 (D.C. Cir. 2017).  It was just as likely, if not more, that the D.C. Circuit would have reached the opposite conclusion – in congruence with all the other circuits that had reached the issue at that time – and Mr. Hicks would then be facing a guidelines sentencing range of 151 to 188 months.  It is clear from the record that Mr. Hicks' counsel was aware of the option to litigate the career offender issue but made a sound strategic decision not to do so.  Plea Hr'g Tr. at 7:05-08.  Instead, Mr. Hicks' counsel was able to negotiate a plea that did not include a career offender enhancement – effectively putting Mr. Hicks in the same position that he would have been in had his counsel litigated the issue and won – without exposing Mr. Hicks to the substantial risk that litigating the issue would have created.

For all these reasons, the Court finds that Mr. Hicks has failed to show by a preponderance of the evidence that his counsel performed deficiently when she chose not to litigate the issue of whether he was a career offender. Indeed, it seems that defense counsel's representation of Mr. Hicks during the plea negotiations was exemplary. She made a reasonable, strategic decision not to litigate the issue; she had effectively already successfully negotiated it away. Because he cannot satisfy one of the two prongs under Strickland, Mr. Hicks' ineffective assistance argument necessarily fails.

### B.   No Need for an Evidentiary Hearing

To the extent that Mr. Hicks has belatedly requested an evidentiary hearing on his Section 2255 motion claiming ineffective assistance of counsel, that request is denied.[6] The Court may decide a claim of ineffective assistance of counsel without an evidentiary hearing unless the movant has offered "substantial evidence suggesting his or her right to the underlying relief." United States v. Gray-Burriss, 801 Fed. Appx. 785, 785-86 (D.C. Cir. 2020); see also United States v. Morrison, 98 F.3d 619, 625-26 (D.C. Cir. 1996) ("[A] summary denial of a § 2255 motion is appropriate when the ineffective assistance claim is speculative."); United States v. Wilson, Criminal Action No. 96-319-01, 2019 WL 4990752 at *14 (D.D.C. Oct. 7, 2019) ("[A] district court may deny a Section 2255 motion without a hearing when 'the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'") (citing 28 U.S.C. § 2255(b)). As discussed supra in section III(A), Mr. Hicks' argument that he would have received a lower sentence if his counsel had litigated his career offender status is

---

[6]    Mr. Hicks originally said there was no need for an evidentiary hearing on his ineffective assistance of counsel claim. Mr. Hicks later requested an evidentiary hearing for the first time in his reply brief.

speculative and the motion and record in this case conclusively show that his counsel's representation was not deficient. He therefore was not entitled to an evidentiary hearing.[7]

### C.  Retroactive Application of Winstead

At the Court's request, the parties also briefed the question of whether the Winstead decision applied retroactively. See Order for Supp. Briefing; Hicks Supp. Brief; US Supp. Brief. Mr. Hicks argues that the D.C. Circuit's Winstead decision announced a new substantive rule that alters the class of persons who can be sentenced as career offenders. Hicks Supp. Br. at 2. The government responds that the Court need not address the question of whether the Winstead decision is retroactive because Mr. Hicks was not sentenced as a career offender. US Supp. Br. at 4 n. 2. It then argues that the Winstead decision is neither a substantive new rule nor a watershed procedural rule, and therefore does not apply retroactively. Id. at 2-4.

The Court agrees that there is no need to decide the retroactivity of Winstead. Mr. Hicks was not sentenced as a career offender and instead was sentenced pursuant to a Rule 11(c)(1)(C) plea agreement that expressly avoided designating him as a career offender, and which jointly proposed a sentence based upon a non-career offender Guidelines range. US Supp.

---

[7] As further evidence that there was no need for an evidentiary hearing, Mr. Hicks failed to even argue that he satisfied the second Strickland prong of prejudice. See United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000) (hearing not required if court determines that "alleged deficiencies of counsel did not prejudice the defendant"); United States v. Gibson, 577 F.Supp.2d 317, 328 (D.D.C. 2008) (ineffective assistance of counsel claim does not merit a hearing if court is confident that alleged deficiencies could not have prejudiced defendant). In order to show prejudice, Mr. Hicks would have had to show that rather than accept a plea where he was not sentenced as a career offender and where three of the four counts in the indictment were dismissed, he would have instead gone to trial if he had been given the opportunity to litigate his career offender status. See Premo v. Moore, 562 U.S. at 129; see also United States v. Taylor, 254 F. Supp. 3d at 154. Mr. Hicks' briefing does not even suggest that this is the case, never mind include a sworn affidavit that he would have gone to trial. See Premo v. Moore, 562 U.S. at 133 Ginsburg, J. concurring) ("[The defendant] never declared that, better informed, he would have resisted the plea bargain and opted for trial."); United States v. Weaks, 840 F. Supp. 2d 12, 19 (D.D.C. 2012).

Br. at 4 n. 2. Accordingly, the question of whether the Winstead decision applies retroactively is not squarely before the Court in this case and the Court therefore need not address it.

## IV. CONCLUSION

Mr. Hicks cannot prevail on his 28 U.S.C. § 2255 claim because he has failed to demonstrate that his counsel's performance was deficient. The Court finds it unnecessary to hold an evidentiary hearing to address the defendant's claims because it is clear from the record that he is not entitled to relief. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: August 5, 2020